No. 22-1262

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

MELISA INGRAM; ROBERT REEVES; and
STEPHANIE WILSON,

*Plaintiffs – Appellees*,

v.

WAYNE COUNTY, MI,

*Defendant – Appellant.*

---

On Appeal from the United States District Court for the
Eastern District of Michigan, No. 2:20-cv-10288

---

**APPELLEES' BRIEF**

---

Wesley Hottot
INSTITUTE FOR JUSTICE
600 University Street
Suite 1730
Seattle, WA 98101
(206) 957-1300
whottot@ij.org

Kirby Thomas West
INSTITUTE FOR JUSTICE
901 North Glebe Road
Suite 900
Arlington, VA 22203
(703) 682-9320
kwest@ij.org

*Attorneys for Appellees*

# Table of Contents

Table of Authorities ............................................................ iii

Corporate Disclosure Statement ................................... vii

Statement in Support of Oral Argument......................... vii

Statement of Jurisdiction .............................................. 1

Statement of Issues ...................................................... 2

Statement of the Case .................................................. 2

Summary of the Argument............................................ 8

Standard of Review....................................................... 10

Argument .................................................................... 11

I.   This Court Should Not Address The County's Many Procedural Objections ............................................................ 11

     A.   Section 1292(b) allows for limited appeal in exceptional cases—not comprehensive review of routine questions ....................... 13

     B.   It would be inefficient to address the county's objections......... 15

II.  If This Court Addresses The County's Non-Certified Procedural Objections, The District Court Properly Overruled Them All............ 19

     A.   Abstention is unwarranted because Stephanie Wilson's state proceedings were inadequate.................................... 19

     B.   Robert Reeves had no means of seeking an interim hearing ... 24

     C.   Melisa Ingram did not waive her right to bring federal claims....................................................... 26

     D.   Ingram has standing................................................ 26

     E.   Wayne County—not the State of Michigan—is the proper party............................................................ 29

     F.   Plaintiffs plausibly alleged that they were denied due process based on the minimum six-month delay between seizure and the initiation of forfeiture proceedings .................... 31

i

III.    *Mathews* Provides The Standard For Deciding The Timeliness Of An
        Interim Hearing ................................................................. 37

        A.    Due Process demands a timely interim hearing when someone
              is deprived of their vehicle ...................................... 38

        B.    The *Mathews* balancing test is the proper test for determining
              how "timely" an interim hearing must be ................................. 41

        C.    If this Court addresses the merits of Court IV, Plaintiffs have a
              right to an interim hearing within six months ......................... 47

              1.    Plaintiffs' allegations support an interim hearing under
                    *Mathews* ........................................................ 41

              2.    Plaintiffs' allegations support an interim hearing under
                    *Barker* ........................................................ 54

Conclusion .................................................................. 59

Certificates of Compliance and Service ....................................... 60

Addendum ..................................................................... 61

# Table of Authorities

## Cases

*Alvarez v. Smith*,
  558 U.S. 87 (2009) ........................................................................ 9, 30, 42

*Armstrong v. Manzo*,
  380 U.S. 545 (1965) .......................................................................... 38, 39

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................... 32, 35

*Barker v. Wingo*,
  407 U.S. 514 (1972) ................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 32

*Booker v. City of Saint Paul*,
  762 F.3d 730 (8th Cir. 2014) ......................................................... 9, 42

*Brown v. District of Columbia*,
  115 F. Supp. 3d 56 (D.D.C. 2015) ............................................... 42, 49

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .......................................................................... 27, 28

*Comm'r v. Shapiro*,
  424 U.S. 614 (1976) ................................................................................ 39

*County of Nassau v. Canavan*,
  802 N.E.2d 616 (N.Y. 2003) ................................................................. 42

*Dehko v. Holder*, No. 13-14085,
  2014 WL 2605433 (E.D. Mich. Jun. 11, 2014) ............................... 23

*Floyd v. City of New York*,
  283 F.R.D. 153 (S.D.N.Y. 2012) .......................................................... 28, 29

*Fuentes v. Shevin*,
  407 U.S. 67 (1972) ................................................................... 20, 21, 40

*Gerstein v. Pugh*,
  420 U.S. 103 (1975) ....................................................................... 21, 22

*Gonzales v. Rivkind*,
   858 F.2d 657 (11th Cir. 1988) ........................................................ 9, 42, 55

*Habich v. City of Dearborn*,
   331 F.3d 524 (6th Cir. 2003) .................................................................. 22

*Hans v. Louisiana*,
   134 U.S. 1 (1890) ...................................................................................31

*In re City of Memphis*,
   293 F.3d 345 (6th Cir. 2002)......................................................12, 13, 17

*In re Forfeiture of 2006 Saturn Ion*,
   No. 164360 (Mich. Sep. 28, 2022)......................................................... 20

*In re Somberg*,
   31 F.4th 1006 (6th Cir. 2022) ......................................................... 13, 14

*In re WTC Disaster Site*,
   414 F.3d 352 (2d Cir. 2005)...................................................................15

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ............................................................................ 39

*Jones v. City of Cincinnati*,
   521 F.3d 555 (6th Cir. 2008).............................................................31, 32

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
   944 F.3d 613 (6th Cir. 2019)...................................................................10

*Krimstock v. Kelly*,
   306 F.3d 40 (2d Cir. 2002).......9, 24, 30, 36–37, 41, 44–45, 49–54, 56–57

*Krimstock v. Safir*, No. 99-CV-12041,
   2000 WL 1702035 (S.D.N.Y. Nov. 13, 2000) ........................................ 24

*Little v. Louisville Gas & Elec. Co.*,
   805 F.3d 695 (6th Cir. 2015) .........................................................13, 14, 17

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) .............. 5, 9–11, 37–39, 41–44, 46–48, 50, 52, 55–59

*McCormick v. Miami Univ.*,
   693 F.3d 654 (6th Cir. 2012)............................................................10, 47

*Morrissey v. Brewer*,
   408 U.S. 471 (1972) ................................................................ 39

*Nat'l Ass'n of Afr. Am.-Owned Media v. Charter Commc'ns, Inc.*,
   915 F.3d 617 (9th Cir. 2019) .................................................... 15

*Nichols v. Wayne County*,
   822 F. App'x 445 (6th Cir. 2020) ...............................7, 38, 40, 41, 43, 46, 47

*Olson v. One 1999 Lexus*,
   924 N.W.2d 594 (Minn. 2019) ................................................... 42

*Parsons v. U.S. Dep't of Justice*,
   801 F.3d 701 (6th Cir. 2015) .................................................... 27

*People v. One 1998 GMC*,
   960 N.E.2d 1071 (Ill. 2011) ...................................................... 42

*Remigio v. Kelly*,
   No. 04-CV-1877, 2005 WL 1950138 (S.D.N.Y. Aug. 12, 2005) ........... 23, 24

*Ross v. Duggan*,
   402 F.3d 575 (6th Cir. 2004) .............................................5, 15, 40

*Serrano v. Customs & Border Patrol*,
   975 F.3d 488 (5th Cir. 2020) ................................................9, 41

*Simms v. District of Columbia*,
   872 F. Supp. 2d 90 (D.D.C. 2012) ...............................30, 31, 36, 37

*Smith v. City of Chicago*,
   524 F.3d 834 (7th Cir. 2008) ...................... 9, 30, 36, 41, 42, 49, 50, 54, 56

*Sniadach v. Fam. Fin. Corp. of Bay View*,
   395 U.S. 337 (1969) ................................................................ 40

*State v. Hochhausler*,
   668 N.E.2d 457 (Ohio 1996) .................................................... 42

*Timbs v. Indiana*,
   139 S. Ct. 682 (2019) ......................................................... 1, 15

*Traughber v. Beauchane*,
   760 F.2d 673 (6th Cir. 1985) .................................................... 21

*United States v. $8,850,*
 461 U.S. 555 (1983) ........................................................ 44, 46, 55

*United States v. Funds from Fifth Third Bank Account,*
 No. 13-11728, 2013 WL 5914101 (E.D. Mich. Nov. 4, 2013) ...................... 23

*United States v. James Daniel Good Real Prop.,*
 510 U.S. 43 (1993) ................................................ 39, 40, 48, 50, 51, 52, 53

*United States v. Ninety-Three Firearms,*
 330 F.3d 414 (6th Cir. 2003) ..........................43, 44, 45, 52, 55, 56, 57, 58

*United States v. One 1971 BMW,*
 652 F.2d 817 (9th Cir. 1981)................................................. 9, 42

*United States v. Von Neumann,*
 474 U.S. 242 (1986) .................................................. 42, 43, 44, 45, 52, 55

*Washington v. Marion Cnty. Prosecutor,*
 264 F. Supp. 3d 957 (S.D. Ind. 2017)...................................... 42, 50, 51, 56

*Will v. Mich. Dep't of State Police,*
 491 U.S. 58 (1989)................................................................31

*William Powell Co. v. Nat'l Indem. Co.,*
 18 F.4th 856 (6th Cir. 2021).........................................................14

*Wood v. Tompkins,*
 33 F.3d 600 (6th Cir. 1994) ................................................. 10, 14

*Younger v. Harris,*
 401 U.S. 37 (1971).......................................18, 20, 21, 22, 23, 24

**Statutes**

28 U.S.C. § 1292(b)............................................... viii, 2, 5, 7, 10–17

28 U.S.C. § 1331 ...................................................................1

42 U.S.C. § 1983.......................................................14, 21, 27, 30, 31

Mich. Comp. Laws § 600.4705(1) ...................................... 25

Mich. Comp. Laws § 600.4706.................................................. 25

## Corporate Disclosure Statement

Appellees Melissa Ingram, Robert Reeves, and Stephanie Wilson are not subsidiaries or affiliates of any publicly owned corporation and there are no publicly owned corporations with a financial interest in the outcome of this case.

## Statement in Support of Oral Argument

Appellees request oral argument to address an issue over which there is a Circuit split: the proper constitutional standard for determining whether a post-seizure hearing is timely after a municipality seizes a person's vehicle for civil forfeiture. Additionally, Appellees wish to discuss the narrow scope of interlocutory appeal under 28 U.S.C. § 1292(b), in response to the county's attempt to appeal issues the district court did not certify and the motions panel did not grant review to address.

## Statement of Jurisdiction

Plaintiffs-Appellees filed a putative class action challenging Wayne County's vehicle seizure and civil-forfeiture practices. Complaint, RE 1 (2/4/2020), Page ID # 1–47. Their amended complaint includes nine causes of action under the U.S. Constitution and seeks equitable relief compelling the county's compliance with Section 1 of the Fourteenth Amendment. Am. Compl. (5/11/2020), RE 12, Page ID # 229–98. The district court thus had jurisdiction under 28 U.S.C. § 1331.

The county moved to dismiss in separate filings. Motions (7/1/2020), RE 18–20, Page ID # 338–610. The district court denied the motions in large part, Order (9/30/2021), RE 54, Page ID # 976–1025, and certified two issues for interlocutory appeal: (1) Whether *Timbs v. Indiana*, 139 S. Ct. 682 (2019), altered precedent regarding excessive fines; and (2) "[w]hether a prompt post-seizure, pre-forfeiture judgment hearing is required under the Fourteenth Amendment Due Process [C]lause." Order (6th Cir. 3/31/2022), RE 61, Page ID # 1083. Litigation is stayed pending the outcome of this appeal. *See* Order (9/30/2021), RE 54, Page ID # 1025.

The motions panel in this case granted interlocutory appeal as to the second issue only, for the stated purpose of resolving "what qualifies as [a]

'timely'" hearing under the Due Process Clause. Order (6th Cir. 3/31/2022),
RE 61, Page ID # 1083.

After the district court denied the county's three reconsideration
motions, Order (6/9/2022), RE 70, Page ID # 1157–73, this Court assumed
interlocutory appellate jurisdiction, *see* Ltr. to Counsel (6th Cir.
6/16/2022), Doc. No. 8, Page ID # 1–3.

## Statement of Issues

(1) Should this Court exercise its discretion under § 1292(b) to
address a raft of procedural objections that the motions panel did not grant
interlocutory appeal to address?

(2) To the extent the Court addresses the county's procedural
objections, did the district court err?

(3) Finally, what is the proper standard for determining the
timeliness of a post-seizure, pre-forfeiture hearing?

## Statement of the Case

Plaintiffs represent a putative class of Detroit-area property owners
challenging the constitutionality of Wayne County's vehicle seizure and
forfeiture system. Their lawsuit alleges that police seize people's cars based
on little or no evidence of criminal behavior, and prosecutors impound the
vehicles for a minimum of six months, during which car owners are

encouraged to pay for the vehicles' return with no judicial involvement. *See* Am. Compl. ¶¶ 1–32, RE 12, Page ID # 229–38 (summary of allegations). Of nine counts, only Count IV is at issue in this appeal.

Count IV alleges that the Fourteenth Amendment's Due Process Clause requires a post-seizure, pre-forfeiture hearing before a neutral decisionmaker—that is, somewhere along the line between when a vehicle is seized and when the case would otherwise come before a judge for civil forfeiture, the county must provide the vehicle owner with a means of challenging the legal basis for seizure. The county's impoundment process takes a minimum of six months, in some cases two years or longer, during which time car owners have no means of contesting seizure. There is no state, local, or administrative mechanism for people to obtain a hearing within a reasonable time after seizure (with one narrow exception relevant to Reeves, discussed below). Plaintiffs and the putative class intend to show that the county's policies and practices violate the Due Process Clause based on the length of delay by county prosecutors in pursuing civil-forfeiture actions, the reasons for those delays, the gravity of people's need for transportation in Detroit, and the relative burden on the county of providing hearings. *Id.* ¶¶ 286–309, RE 12, Page ID # 285–91.

1.    *The county's procedural objections*

In response to the lawsuit, the county did not answer, but filed three motions to dismiss raising 13 discrete issues, styled as a: (1) "motion to dismiss, or in the alternative, motion for summary judgment on the claims asserted by . . . Melisa Ingram"; (2) "motion to abstain or stay, or in the alternative, motion to dismiss the claims asserted by . . . Robert Reeves"; and (3) "motion to abstain on the claims asserted by . . . Stephanie Wilson." Motions (7/1/2020), RE 18–20, Page ID # 338–610.

2.    *The district court's order and certification for interlocutory appeal*

The late Honorable Arthur J. Tarnow heard oral argument on the county's motions. Notice (10/22/2020), RE 43, Page ID # 952. Shortly before he died, Judge Tarnow granted the county's motion to abstain on some of Wilson's claims, granted in part and denied in part its motion to dismiss Reeves's claims, and granted in part and denied in part its motion to dismiss Ingram's claims. Order (9/30/21), RE 54, Page ID # 1023–25. The net result is that at least one plaintiff's claims survived as to eight of nine causes of action.

The district court dismissed one cause of action (Count II), based on the Excessive Fines Clause, but otherwise left at least one plaintiff as to each of the eight remaining causes of action. *Id.*, Page ID # 1023–25.

As to Count IV, the district court concluded that "the right to have a prompt post-seizure hearing" is an "open question in the Sixth Circuit." Order (9/30/2021), RE 54, Page ID # 1011. Based on other Circuits' precedent, the court held that the balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), governs the county's vehicle seizure and forfeiture policies and concluded that Plaintiffs plausibly alleged a due-process claim under that standard. Order (9/30/2021), RE 54, Page ID # 1013–19.

The district court then took the extraordinary step of certifying two questions for interlocutory appeal under 28 U.S.C. § 1292(b): (1) Whether "*Timbs* [impacts] *Ross* [*v. Duggan*, 402 F.3d 575 (6th Cir. 2004)'s] conclusion regarding excessive fines"; and (2) "[w]hether a prompt post-seizure, pre-forfeiture judgment hearing is required under the Fourteenth Amendment Due Process Clause." Order (9/30/2021), RE 54, Page ID # 1023–24; *see also* Order (6th Cir. 3/31/2022), RE 61, Page ID # 1083.

3.   *The county's renewed procedural objections*

The county sought permission to appeal. *See* Petition for Permission to Appeal, *In re Wayne County*, No. 21-0106 (6th Cir. filed 10/8/2021), Doc. 1-2, Page ID # 1–23. In its petition, the county mischaracterized the district court's order as holding three Michigan statutes "unconstitutional." *Id.*, Page ID # 1, 12, 13. (The district court instead held that at least one

plaintiff had stated a cause of action as to eight of nine claims.) Based on this misunderstanding, the county included four "questions presented" in its petition, including whether three Michigan laws are unconstitutional and whether Plaintiffs have "cleared all legal hurdles" to pursue constitutional challenges. *Id.*, Page ID # 14. The county *excluded* the two issues which the district court certified for interlocutory appeal. *Id.* Plaintiffs filed an answer and cross-petition. *See* Cross-Petition for Permission to Appeal, *In re Melisa Ingram*, No. 21-0107 (6th Cir. filed 10/19/2021), Doc. 1-2, Page ID # 1–23. Plaintiffs specifically argued that the county's nest of procedural issues would make a poor fit for interlocutory appeal. *Id.*, Page ID # 8.

While these petitions were pending, the county filed three motions for reconsideration in the district court. Motions for Reconsideration, RE 55–57, Page ID # 1026–69. The Honorable George Caram Steeh denied the motions as to all issues and all parties.[1] Order (6/9/2022), RE 70, Page ID# 1157–73. Judge Steeh specifically addressed the county's procedural arguments, explaining they had been "previously made and considered." *Id.*, Page ID # 1167. He concluded that "a motion for reconsideration which

---

[1] Judge Steeh took over after Judge Tarnow's death.

presents the same issues already ruled upon by the court . . . will not be granted." *Id.*, Page ID # 1169.

*4.    This Court's limited grant of interlocutory appeal*

The motions panel granted permission to appeal to provide "a clearer standard" as to "what qualifies as [a] 'timely'" post-seizure, pre-forfeiture hearing." *See* Order (6th Cir. 3/31/2022), RE 61, Page ID # 1084–85. Conversely, the panel declined to hear the first certified question on the excessive fines claim. *Id.* The panel explained that while *Nichols v. Wayne County*, 822 F. App'x 445, 450–51 (6th Cir. 2020), recognizes the constitutional requirement of a timely post-seizure, pre-forfeiture hearing, it does not answer "'the only constitutional question remaining,' namely what qualifies as 'timely.'" *See* Order (6th Cir. 3/31/2022), RE 61, Page ID # 1084. Thus, the motions panel agreed with the district court that clarifying the legal standard for Count IV would help "advance the ultimate termination of the litigation," considering that the losing party on the issue would "almost certainly challenge the timing on appeal." *Id.*, Page ID # 1085. The panel therefore exercised its discretion under § 1292(b) to permit appeal on the timeliness issue only. *Id.* The panel did not address the many procedural objections raised by the county.

## Summary of the Argument

This Court granted interlocutory appeal to provide "a clearer standard" for "what qualifies as [a] 'timely'" post-seizure, pre-forfeiture hearing." *See* Order (6th Cir. 3/31/22), RE 61 at 3–4, Page ID # 1084–85. Yet, the county seeks to greatly expand the scope of review to include a raft of procedural objections that the county raised (twice) in the district court, but which the district court did not certify for interlocutory appeal— objections the county raised again in its petition for permission to appeal, but which the motions panel did not grant review to address.

This Court should decline the invitation to expand the scope of this appeal. Doing so would contravene the purposes of interlocutory review: judicial efficiency and the resolution of ambiguous legal issues. Unlike Count IV, the county's procedural objections are routine and uncontroversial. There is no justification for exercising the extraordinary discretion provided by § 1292 and, indeed, neither the district court nor the motions panel saw fit to exercise it except as to Count IV.

If the Court nevertheless chooses to address the procedural objections, the district court properly rejected them. There is no basis for abstention; (2) while the county is correct some people have a means of seeking interim hearings under state law, that is a tacit concession that

other people, including the plaintiffs, have no such means; (3) the settlement agreement that Ingram signed the first time her vehicle was impounded did not waive prospective challenges in federal court; (4) Ingram has Article III standing; (5) Wayne County (not Michigan) is the government that should be sued over the county's policies; and (6) Plaintiffs easily stated a claim for which relief could be granted as to Count IV—the post-seizure hearing actually before the Court.

As to Count IV, the county is wrong to apply the speedy-trial test from *Barker v. Wingo*, 407 U.S. 514 (1972). The correct standard, applied by a lopsided majority of Circuits, is not *Barker*, but the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). All but one Circuit uses *Mathews* to evaluate the due-process right to an interim hearing prior to final judgment. *See Krimstock v. Kelly*, 306 F.3d 40, 52 n.12, 60 (2d Cir. 2002) (Sotomayor, J.); *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496–97, 500 n.17 (5th Cir. 2020); *Smith v. City of Chicago*, 524 F.3d 834, 836 (7th Cir. 2008), *vacated as moot*, *Alvarez v. Smith*, 558 U.S. 87 (2009); *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014); *United States v. One 1971 BMW*, 652 F.2d 817, 820–21 (9th Cir. 1981); *but see Gonzales v. Rivkind*, 858 F.2d 657, 661 (11th Cir. 1988). This Court should firmly align itself with the overwhelming weight of Circuit precedent

by applying *Mathews* to the county's policies and practices. That is enough in the context of this appeal. But the application of *Mathews* to the allegations in the complaint leads to one conclusion: The county has a routine process by which it systematically denies due process. Whether innocent or guilty, vehicle owners are deprived of their property for six months or longer with no means of bringing their case before a judge. That policy is unconstitutional because it denies vehicle owners a meaningful opportunity to be heard at a meaningful time. Just like in *Krimstock* and *Smith*, the county's policy is unconstitutional.

## Standard of Review

On interlocutory appeal under 28 U.S.C. § 1292(b), appellate jurisdiction is "limited to pure questions of law." *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 619 (6th Cir. 2019). When—as here—an interlocutory appeal arises from a denial of a Rule 12(b)(6) motion to dismiss, the standard of review for these questions remains *de novo*. *See Wood v. Tompkins*, 33 F.3d 600, 604 (6th Cir. 1994). Appellate courts do not resolve disputed facts on appeal under § 1292(b), *id.*, but rather "assume the veracity of well-pleaded factual allegations" when interlocutory review follows a ruling on a motion to dismiss. *See McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012).

## Argument

This Court should not address the county's procedural objections on interlocutory appeal because doing so would be inconsistent with the motions panel's order granting review, as well as inconsistent with § 1292(b)'s purpose of promoting judicial efficiency and resolving ambiguous questions of law. To the extent this Court reaches out to address those uncertified issues, the district court properly decided them. In sum, the Court should address the one issue both certified for interlocutory appeal and granted review—the standard for determining the timeliness of a post-deprivation, pre-forfeiture hearing. With the real issue on the table, the Court should align itself with the weight of appellate authority and hold that *Mathews* provides the standard for determining timeliness and that the county denies vehicle owners due process when it impounds vehicles for six months or longer without providing a means of challenging the basis for seizure before a neutral decisionmaker.

## I.    This Court Should Not Address The County's Many Procedural Objections.

The motions panel in this case granted the county's petition for permission to appeal the order denying dismissal of Count IV and did so to provide "a clearer standard" as to "what qualifies as [a] 'timely'" post-seizure, pre-forfeiture hearing." *See* Order (6th Cir. 3/31/2022), RE 61,

Page ID # 1084–85. However, the motions panel denied Plaintiffs-Appellees' cross-petition seeking reinstatement of Count II dealing with excessive fines. The county also asked for interlocutory review of its procedural objections, but the motions panel ignored them.

The county now ignores the limited scope of the order granting interlocutory appeal. Indeed, despite the narrow grant of discretionary review by the motions panel, the county has filed an oversized brief exhaustively rehashing the same raft of procedural issues that the motions panel ignored. The county's preferred approach would, if indulged, only further delay this litigation contrary to the purpose of § 1292(b), and encourage similar maneuvers to expand the scope of interlocutory appeal in future cases. That is why the statute allows for interlocutory appellate review of difficult legal questions, only when doing so would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Interlocutory appeal is an exception to the final judgment rule and should be used "only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). These types of appeals are intended to be limited and narrow in scope. This Court should not allow the county to use interlocutory appeal in this case to rehash failed procedural objections a third time if for no other reason than that doing so would slow this

litigation down and only encourage the kind of piecemeal appeals that § 1292 seeks to avoid.

###### A. Section 1292(b) allows for limited appeal in exceptional cases—not comprehensive review of routine questions.

Appellate jurisdiction is, ordinarily, limited to review of final judgments. *In re Somberg*, 31 F.4th 1006, 1008 (6th Cir. 2022). This bedrock rule prevents piecemeal appeals and reduces appellate court workloads, thereby promoting judicial efficiency. *See id.* at 1009. Section 1292 nevertheless recognizes that there are situations when an interlocutory appeal would prevent "protracted and expensive litigation" and promote "judicial and party economy." *Little v. Louisville Gas & Elec. Co.*, 805 F.3d 695, 699 (6th Cir. 2015). Therefore, Section 1292(b) provides for limited appeal of certain questions of law when doing so would "materially advance the ultimate termination of the litigation." *Somberg*, 31 F.4th at 1008 (quoting statute).

In line with the statute's extraordinary purpose, this Court grants interlocutory review "sparingly and only in exceptional cases." *City of Memphis*, 293 F.3d at 350. Review is appropriate "only to the extent a district court has certified that order for interlocutory appeal." *Little*, 805 F.3d at 698–99. This approach keeps interlocutory review in its place as the

exception to the final judgment rule, and it is consistent with § 1292(b)'s text. *See* 28 U.S.C. § 1292(b) ("The Court of Appeals . . . may thereupon, *in its discretion*, permit an appeal . . . ." (emphasis added)). That is, although § 1292(b) *authorizes* appellate courts to consider non-certified questions within the district court's order, it does not *compel* them to do so because doing so would undermine the provision's very purpose: efficiency. *See Little*, 805 F.3d at 699–700.

Consistent with this policy, this Court has refused to consider non-certified questions under § 1292(b). In *Wood v. Tompkins*, for example, the district court had certified the question whether certain laws conferred a § 1983 private right of action. 33 F.3d at 604. The parties asked the Court to address other issues, including standing, due process, and the merits, *id.*, but this Court "decline[d] to address" those issues without further explanation. *Id.* More recently, this Court has cited the policies underlying § 1292(b) when limiting the scope of an interlocutory appeal to select issues or rejecting interlocutory appeal altogether. *See, e.g.*, *Somberg*, 31 F.4th at 1009 (declining interlocutory appeal); *William Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 874 (6th Cir. 2021) (confining interlocutory appeal to select issues). That is what happened in this case: The motions panel chose

14

to limit the scope of interlocutory appeal to one of just two issues certified by the district court, Count IV.

Section 1292(b) is an extraordinary method of appeal for the rare instances in which awaiting judgment on questions of law would be judicially inefficient. At both the motions and merits stages, appellate courts exercise their statutory discretion and limit their review based on this understanding.[2]

## B.    It would be inefficient to address the county's procedural objections.

The county seeks the rare third bite at the apple. A motions panel of this Court exercised its discretion to permit an appeal to provide "a clearer standard" as to "what qualifies as 'timely.'" *See* Order (6th Cir. 3/31/2022), RE 61, Page ID # 1084. Conversely, the same panel chose not to consider whether *Ross v. Duggan*, 402 F.3d 575 (6th Cir. 2004), forecloses an excessive-fines claim in light of *Timbs v. Indiana*, 139 S. Ct. 682 (2019). *Id.*

---

[2] Sometimes a court determines that a motions panel improperly granted interlocutory appeal on some issues. *See, e.g.*, *Nat'l Ass'n of Afr. Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617, 622 n.2 (9th Cir. 2019), *cert. granted, judgment vacated on other grounds*, 140 S. Ct. 2561 (2020); *In re WTC Disaster Site*, 414 F.3d 352, 370–71 (2d Cir. 2005). But in this case, everyone agrees this Court has interlocutory jurisdiction to review the legal issue in Count IV. What the county urges—that the Court also address procedural issues that were not certified by the district court or accepted for review by the motions panel—has no support in case law.

In its opening brief, the county ignores this order and relitigates the same raft of procedural issues that failed in the district court. Motions (7/1/2020), RE 18–20, Page ID # 338–610, Motions for Reconsideration (10/14/2021), RE 55–57, Page ID # 1026–69. This Court should likewise decline to address these issues under § 1292(b).

In the district court, the county filed three motions with 13 different issues. Motions (7/1/2020), RE 18–20, Page ID # 338–610. The district court packaged all these into one ruling, granting one motion, denying a second, and granting in part and denying in part the third. Order (9/30/21), RE 54, Page ID # 976–1025. It also certified two questions under § 1292(b) "for the sake of promoting efficiency": (1) "Whether '*Timbs* [impacts] *Ross*' conclusion regarding excessive fines"; and (2) "[w]hether a prompt post-seizure, pre-forfeiture judgment hearing is required under the Fourteenth Amendment Due Process Clause." *See* Order (6th Cir. 3/31/2022), RE 61, Page ID # 1083. Based on the certification below, this Court permitted limited appeal to provide "a clearer standard" on the second question, explaining that this guidance would speed up the inevitable appeal of the issue. *See id.* But nowhere in the panel's order was there any discussion of the six issues that make up the vast majority of the county's brief. *See* Wayne Cnty.'s Br., at 1–2, 64–67, Page ID # 1–2, 73–76.

16

Section 1292(b) provides for limited appeal "sparingly and only in exceptional cases." *City of Memphis*, 293 F.3d at 350. As the county would have it, however, it is the exception that eats the rule, allowing a third opportunity to relitigate the same kitchen-sink arguments that have failed twice before. As this Court stated in *Little*, using the statute in this manner contravenes its purpose: "The purpose [of § 1292(b)] is plainly not furthered by interpreting [it] to require appellate review of every direction or command given in a district court opinion when only one of those directions or commands . . . 'may materially advance the ultimate termination of the litigation.'" 805 F.3d at 699.

This Court should decline to exercise its discretion to expand the scope of this appeal. Considering the county's procedural objections a third time would encourage the same inefficient tactics: (1) file multiple motions with kitchen-sink arguments; (2) file multiple motions for reconsideration; (3) get one of these issues certified for interlocutory review; and (4) repeat any failed issues again on interlocutory appeal.

Litigating and relitigating in this manner is inefficient. The case was filed nearly three years ago. *See* Complaint (2/4/2020), RE 1, Page ID # 1–54. To date, the district court has not ruled on the pending motion for class certification, nor has it addressed the merits of any cause of action.

17

Relitigating procedural objections here would not get the district court any closer to a resolution; it would only reopen the handful of issues the district court has resolved.

Plaintiffs do not seek an opportunity to address other issues. Otherwise, this Court would have to consider addressing additional non-certified issues, including: (1) Did the district court err by concluding that *Younger* abstention applied to some of Wilson's claims; (2) Did it err by concluding that Reeves failed to raise a Fourth Amendment claim under a municipal liability theory; (3) Did it err by concluding that the Omnibus Forfeiture Act sufficiently protects innocent owners; (4) Did it err by concluding that any challenge to one of Ingram's two vehicle seizure was barred by res judicata? *See* Order (9/30/2021), RE 54, Page ID # 985–91, 996–98, 1003–04. These issues turned out in the county's favor, and therefore, it does not include these in its issues for interlocutory appeal. *See* Wayne Cnty.'s Br. at 1–2, Page ID # 10–11. It would be inefficient to answer the "threshold" issues that the county lost on below, but even more so inefficient to do so without also tackling the rulings below which the county won.

For these reasons, this Court should decline to exercise jurisdiction over the county's laundry list of issues. Rather, this Court should answer

the question that it already recognized is at the heart of this appeal: What is the proper standard for determining the timeliness of a post-seizure, pre-forfeiture hearing?

## II.    If This Court Addresses The County's Non-Certified Procedural Objections, The District Court Properly Overruled Them All.

The county shamelessly seeks reconsideration of several procedural issues that have not been certified for interlocutory appeal. Specifically, the county goes beyond the limited grant of pre-judgment review by arguing that (1) the district court erred by not abstaining on all of Wilson's claims; (2) Michigan's Omnibus Forfeiture Act provided Reeves with adequate state remedies; (3) Ingram's settlement of the first forfeiture case against her car precluded her from challenging a second forfeiture case against the car; (4) Ingram lacks Article III standing; (5) only the State of Michigan can be sued for Wayne County's policies; and (6) no one in this case experienced an unconstitutional delay in forfeiture proceedings. If the Court chooses to address these issues (and it should not), the district court was correct about them all.

### A.    Abstention is unwarranted because Stephanie Wilson's state proceedings were inadequate.

The district court granted the county's motion to abstain on some of Wilson's claims—those directed at the ongoing civil-forfeiture case against

19

her Saturn Ion.[3] The county requests that this Court address the uncertified

issue of whether abstention is also warranted as to the seizure and civil

forfeiture of her Chevy Malibu some years back. *See* Wayne Cnty.'s Br. at

34–40, Page ID # 43–49. The district court (correctly) saw no basis for

abstention because there are no ongoing proceedings concerning the first

car Wilson lost to the county's process.

Time and again, however, the Supreme Court has observed that

abstention under *Younger v. Harris*, 401 U.S. 37 (1971), does not apply

when a federal plaintiff is complaining about the lack of adequate

procedures in the underlying state proceeding.

For example, the plaintiffs in *Fuentes v. Shevin*, like the plaintiffs

here, sought declaratory and injunctive relief after they were deprived of

their property without proper notice and without a real opportunity to be

heard. 407 U.S. 67, 71 (1972). Notwithstanding pending state-court

proceedings seeking replevin, the Supreme Court pointed out that *Younger*

abstention was inappropriate because the plaintiffs were challenging the

"prejudgment seizure of property to which they had *already* been

---

[3] The Michigan Supreme Court recently ordered argument on
Wilson's petition for review. *See In re Forfeiture of 2006 Saturn Ion*, No.
164360 (Mich. Sep. 28, 2022) (order under Mich. Court Rule 7.305(H)(1)
directing oral argument on application for leave to appeal).

subjected." *Id.* at 71 n.3 (emphasis added); *see also Traughber v. Beauchane*, 760 F.2d 673, 685 (6th Cir. 1985) (Wellford, J., concurring) (observing of the plaintiffs in *Fuentes* that "in contrast to the classic *Younger* situation, the *Fuentes* suits for federal equitable relief would not interfere with pending or future court proceedings in the underlying state suit").

The same is true here, where Plaintiffs do not seek to stop state proceedings; rather, they challenge Wayne County's seizure policies and practices prior to the commencement of such proceedings. Like in *Fuentes*, Wilson has "already been subjected" to the procedures she is challenging; therefore, *Younger* cannot apply. *Fuentes*, 407 U.S. at 71 n.3.

Similarly, in *Gerstein v. Pugh*, plaintiffs challenged Florida's procedure of charging all non-capital offenses by information (rather than indictment by grand jury) and holding arrestees for trial without any preliminary hearing. 420 U.S. 103, 105 (1975). People subjected to this policy filed a class action under Section 1983, "claiming a constitutional right to a judicial hearing on the issue of probable cause and requesting declaratory and injunctive relief." *Id.* at 107. The district court granted relief, ordering the defendants "to give the named plaintiffs an immediate preliminary hearing." *Id.* Notwithstanding the ongoing state criminal

proceedings, the Supreme Court unanimously held that the plaintiffs' claim was not barred by *Younger*. *Id.* at 108 n.9. The Supreme Court observed that "[t]he injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution . . . ." *Id.*

Like in *Gerstein*, Wilson challenges the constitutionality of the County's seizure and impoundment procedures prior to state court involvement. Nothing about her claims would interfere with the county's ability to pursue parallel state proceedings that might arise *after* Plaintiffs are subjected to the county's unconstitutional pre-forfeiture practices.

The Court has applied these principles where, as here, the federal plaintiff raises claims that cannot be adjudicated in the parallel state proceeding. For example, in *Habich v. City of Dearborn*, the Court reversed the district court's decision to abstain under *Younger* because "the issues in [the plaintiff's] federal suit could neither be proven as part of the state case-in-chief nor raised as an affirmative defense." 331 F.3d 524, 531 (6th Cir. 2003). It held that the required "opportunity" to bring federal claims in state proceedings was not satisfied where, to do so, the federal plaintiff would have to initiate a separate lawsuit and join that with the pending state action. *Id.* at 531–32.

Similarly, the pending forfeiture proceeding against Wilson's Saturn Ion will not—and cannot—adjudicate her federal claims involving her Chevy Malibu, which the county seized and forfeited years ago. In the pending state case, Wilson cannot seek the damages that she seeks here for the seizure of her Malibu and—because civil-forfeiture actions are nominally against property, not people—she cannot bring counterclaims seeking prospective declaratory and injunctive relief based on the seizure of her Ion. *See United States v. Funds from Fifth Third Bank Account*, No. 13-11728, 2013 WL 5914101, at *12 (E.D. Mich. Nov. 4, 2013) (dismissing counterclaims because government's civil-forfeiture action was *in rem* and against the property, not the property owner); *Dehko v. Holder*, No. 13-14085, 2014 WL 2605433, at *2 n.5 (E.D. Mich. Jun. 11, 2014) (similar). Like the plaintiff in *Habich*, Wilson could only bring her federal claims before the state court if she filed a separate lawsuit seeking affirmative relief. That extra step makes the state proceedings inadequate under *Younger*.

In the forfeiture context, specifically, courts have refused to abstain under *Younger* because state forfeiture proceedings do not provide an adequate opportunity to raise a due-process right to a non-existent preliminary hearing. *See Remigio v. Kelly*, No. 04-CV-1877, 2005 WL

1950138, at *12 (S.D.N.Y. Aug. 12, 2005) (noting that "the state [forfeiture] proceeding has stalled in some sort of legal purgatory since [the plaintiff's car was seized] offering [plaintiff] no adequate opportunity to press his due-process claims"); *Krimstock v. Safir*, No. 99-CV-12041, 2000 WL 1702035, at *3 (S.D.N.Y. Nov. 13, 2000), *rev'd on other grounds sub nom. Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) (holding that due process requires a hearing that did not exist under state or local law).

Properly understood, Plaintiffs' complaint challenges the county's seizure policies and practice from the time property is taken off the street until the time the county begins to litigate a forfeiture case in state court. That is an issue that Wilson would not be able to litigate in the context of state civil forfeiture. Accordingly, *Younger* does not apply.

## B.   Robert Reeves had no means of seeking an interim hearing.

The parties apparently agree there is no procedural means of seeking an interim judicial hearing for the return of property that has been seized—as four of the vehicles in this case were—based on an alleged link to drugs or prostitution. Am. Compl. ¶ 23, RE 12, Page ID # 233. While there is a means of doing so under Michigan's so called Omnibus Forfeiture Act, it only authorizes interim hearings where a vehicle owner "did not have prior

24

knowledge of, or consent to the commission of, the crime . . . ." Mich.
Comp. Laws § 600.4705(1).

Reeves is the only one of the Plaintiffs whose property was seized and
impounded under the Act. Still, he could not have made use of the interim
hearing procedure because he was the person driving his car when it was
seized—unlike Ingram and other members of the putative class, who loaned
their cars to someone else who was driving at the time of seizure.

Regardless, the allegations are that the county denies notice and an
opportunity to be heard, even under the terms of the statute, because it
does not make people aware of the interim-hearing procedures of the Act or
comply with its attendant obligations to release property within 35 days of
seizure or obtain a judicial warrant for continued impoundment. *See* Am.
Compl. ¶ 24, RE 12, Page ID # 234; *see also* Mich. Comp. Laws § 600.4706.

As a result, the innocent-owner protections of the Act have no bearing
on this case. They provide, at best, a means for third-parties to seek interim
hearings based only on their lack of knowledge of, or consent to, a criminal
use of their property. By contrast, this case seeks to enforce the right of
property owners, whether behind the wheel or not, to challenge the
continued detention of their vehicle prior to the initiation of civil-forfeiture
proceedings.

### C.    Melisa Ingram did not waive her right to bring federal claims.

Next, the county accuses Ingram of violating the terms of the settlement agreement she signed as a condition of getting her car back after the first seizure. Wayne Cnty.'s Br. at 43–47, Page ID # 52–56.

But that agreement has no effect beyond the state action the county threatened against Ingram's vehicle that first time, more than four months after the initial seizure. By its terms, the agreement "precludes any action *in this case* regarding the vehicle and constitutes a final settlement of the civil nuisance abatement case." Release, RE 20-8, Page ID # 527 (emphasis added). It does not apply to subsequent federal-court litigation.

Regardless, no such agreement was signed with respect to the second seizure of Ingram's vehicle, which resulted in a seven-month impoundment process, and which she also challenges.

### D.    Ingram has standing.

Plaintiffs are precisely the sort of people who should be challenging the county's seizure and impoundment practices. Each of them has lost property to those practices—two of them twice. *See* Am. Compl. ¶¶ 45–92 (Ingram's experience), ¶¶ 93–148 (Wilson's experience), ¶¶ 149–81 (Reeves's experience), RE 12, Page ID # 241–60. Because their experiences are common, *id.* ¶¶ 182–85, Page ID # 260–61, and the county has a policy

26

and practice of violating people's rights, *id.* ¶¶ 186–203, Page ID # 261–64, Plaintiffs' injuries can be expected to repeat absent this Court's intervention, *see id.* ¶¶ 204–32 (outlining injuries), Page ID # 264–69.

The county only challenges the standing of Ingram; it makes no objection as to the standing of Reeves, Wilson, or the putative class. *See* Wayne Cnty.'s Br. at 47–50, Page ID # 56–59). As a preliminary matter, under the "one-plaintiff rule," the presence of two named plaintiffs with standing makes it unnecessary for the Court to address Ingram's individual standing. *See Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (observing that "only one plaintiff needs to have standing in order for the suit to move forward"). If the Court reaches the issue, however, Ingram also has standing.

The county's brief argument to the contrary turns on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the Supreme Court held that the fact that a man was choked by police once did not establish the immediacy of future choking injuries sufficient to show Article III standing. *Id.* at 97–100. As a result, Article III standing generally cannot be established based merely on speculation that law enforcement will again violate the plaintiff's rights. But this familiar limitation does not apply here.

While it was unlikely that Mr. Lyons—among the many residents of Los Angeles—would be choked again, it is sadly likely that Ingram will lose her car a third time. *Floyd v. City of New York* offers a helpful illustration. *Floyd* was a class action lawsuit that successfully challenged New York's stop-and-frisk program on Fourth Amendment grounds. 283 F.R.D. 153 (S.D.N.Y. 2012). Unlike the plaintiff in *Lyons*, the plaintiffs in *Floyd* made plausible allegations that they would be targeted again. *Id*. at 169–70. In *Lyons*, the plaintiff feared that he would be put in a chokehold again someday because he might again choose to violate the law and be arrested. 461 U.S. at 105–08. By contrast, in *Floyd*, the plaintiffs had been stopped and frisked in the past—some more than once—and some lived in areas of the city where police were known to concentrate stop and frisk activity. 283 F.R.D. at 169–70. As such, it was reasonable to assume they would be subject to stop and frisk in the future.

Like the plaintiffs in *Floyd*, Ingram has had her rights violated more than once by the local policy. Her car was seized and impounded by the county twice. The first time, she paid more than $1,300 to get her car back reasonably quickly. Am. Compl. ¶¶ 49–64, RE 12,, Page ID # 241–44. The second seizure spanned seven months before Ingram declared bankruptcy and relinquished her interest in the car to her creditors. *Id*. ¶¶ 65–91, Page

28

ID # 244–48. The county nevertheless filed a civil-forfeiture case against the car and named Ingram as its owner. *Id.*

Like the plaintiffs in *Floyd*, Ingram credibly fears that her vehicle will be seized again, not because she has done anything wrong, but because her previous two experiences have taught her that anyone's property can be seized based on the thinnest of allegations. Her constitutionally redressable injury is—like the entirety of Plaintiffs' case—focused on the county's policy of treating vehicle owners like criminals from the time a car is seized until the time that the county files civil-forfeiture paperwork. Her allegations, like those of the other Plaintiffs and putative class, show that this period runs a minimum of six months.

### E. Wayne County—not the State of Michigan—is the proper party.

The county suggests that this case is really about state laws for which the county cannot be held accountable. *See* Wayne Cnty.'s Br. at 51–54, Page ID # 60–63. It is only a straw man.

As the district court recognized, Plaintiffs do not challenge state laws; they challenge Wayne County's policies and practices from the time a vehicle is seized in contemplation of a state civil-forfeiture action and the time that action is filed. *See* Am. Compl. ¶¶ 1–27, RE 12, Page ID # 229–35 (describing the county's policies and the scope of this lawsuit). This case

29

does not seek federal intervention striking down a Michigan law; rather, Plaintiffs seek declaratory and injunctive relief against the actions taken by the county under color of those laws. *See id.* ¶¶ 286–309, Page ID # 285–91. That is precisely what § 1983 authorizes: a cause of action for violation of a person's federal constitutional rights based on the behavior of local authorities acting under color of state law. 42 U.S.C. § 1983.

The county insists that what Plaintiffs really want is to control the actions of the Michigan courts. Wayne Cnty.'s Br. at 53–54, Page ID # 62–63. Not so. Like all local governments, the county has an independent obligation to conform its seizure practices to the Due Process Clause. Plaintiffs seek federal intervention requiring *the county* to provide post-seizure, pre-forfeiture hearings by some means—whether administrative or by use of the state courts. *See* Am. Compl. ¶¶ 286–309, Page ID # 285–91. Moreover, federal courts have ruled in favor of plaintiffs on identical claims without requiring them to sue states or court systems. *See Smith v. City of Chicago*, 524 F.3d 834, 835 (7th Cir. 2008), *vacated as moot sub nom. Alvarez v. Smith*, 558 U.S. 87 (2009) (suit against City of Chicago and superintendent of police); *Krimstock v. Kelly*, 306 F.3d 40, 43 n.1, 45 (2d Cir. 2002) (suit against police commissioner and City of New York); *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 91–95 (D.D.C. 2012) (suit

30

against DC, the chief of police, and mayor). The fact that the plaintiffs in those cases did not name the state government, any judicial officer, or court administrator as a defendant did not preclude any of those courts from ruling on the plaintiffs' claims to a prompt, post-deprivation hearing. Nor should it prevent this Court from doing so.

The county is also wrong that the state is the only proper party. Michigan—like all states—is immune from suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding that § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties"). This has been blackletter law for some time. *See, e.g.*, *Hans v. Louisiana*, 134 U.S. 1, 15 (1890) (observing that federal court lawsuits against non-consenting states are "unknown to the law" and "not contemplated by the constitution"). We are therefore puzzled by the argument that while the county cannot be sued for its county-level policies, the state somehow can. The reverse is true: Michigan is immune from this type of lawsuit and the county is the proper party.

**F.    Plaintiffs plausibly alleged that they were denied due process based on the minimum six-month delay between seizure and the initiation of forfeiture proceedings.**

The allegations in the complaint govern Wayne County's underlying effort to dismiss Plaintiffs' entire case. *See Jones v. City of Cincinnati*, 521

31

F.3d 555, 562 (6th Cir. 2008) (decisions on motions to dismiss are confined to the pleadings). Yet, nowhere in its moving papers below or here does the county wrestle with more than 300 specific allegations that this Court would have to consider before dismissing Plaintiffs' causes of action.

Plaintiffs' only burden was to set out "sufficient factual matter" demonstrating their claims are plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *See Iqbal*, 556 U.S. at 678. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation omitted).

Given these liberal rules of pleading, the district court was correct to hold that Plaintiffs met their burden to overcome the motions to dismiss. The complaint makes several hundred detailed allegations which—if true— could amount to winning constitutional claims. For example:

- Wayne County has an official policy of seizing cars and other property without a factual basis to believe that the property is connected to a crime. Am. Compl. ¶ 3, RE 12, Page ID # 229.

- The prosecutor's office is responsible for impounding cars (and other property) seized by local law enforcement. *Id.* ¶ 4, Page ID # 230.

- The prosecutor's office operates a Vehicle Seizure Unit. *Id.* ¶ 5, Page ID # 230.

- It is standard for police to seize cars because they are driven into, or out of, an area subjectively known to officers as having a generalized association with crime. *Id.* ¶ 6, Page ID # 230.

- For example, the county has seized cars, impounded them for the better part of a year, and even permanently forfeited them in the following situations: a boyfriend borrowed a car and drove it to a house suspected of harboring drugs or prostitution; a construction worker drove to a job site where someone else may have stolen something; an innocent person allegedly drove into the "wrong neighborhood" and picked up a man who may have consumed drugs shortly before or after. In each situation, no one is arrested. *Id.* ¶ 7, Page ID # 230.

33

- From this point forward, innocent owners and criminal suspects are treated alike. Prosecutors impound the car until the owner pays a "redemption fee," plus any towing and storage expenses. *Id*. ¶ 8, Page ID # 230–31.

- In every case, the county demands $900 for a first seizure, $1,800 for a second, and $2,700 for a third, regardless of the severity of the alleged conduct and the owner's role. It makes no difference that the owner may have no connection to criminal activity. Everyone pays the same redemption fee. *Id*. ¶ 9, Page ID # 231.

- If someone wishes to contest a seizure, they must claim ownership within 17 calendar days—no sooner than three business days and no later than 20 calendar days after seizure. *Id*. ¶ 10, Page ID # 231.

- When a vehicle owner does not act within 17 days, the county automatically forfeits the property. This occurs with zero judicial oversight. *Id*. ¶ 11, Page ID # 231.

- Car owners who affirmatively contest seizure are referred to the Vehicle Seizure Unit. *Id*. ¶ 12, Page ID # 231.

- The unit uniformly tells people they have three options: abandon the property, wait for prosecutors to decide what to do, or pay the redemption fee. *Id.* ¶ 13, Page ID # 232.

- When vehicle owners are unwilling to abandon their cars and unable to pay the redemption fee, they are made to wait six months or longer before prosecutors initiate civil-forfeiture proceedings. *Id.* ¶ 14, Page ID # 232.

- When forfeiture proceedings begin, the vehicle owner is compelled to attend a "pre-trial conference." These conferences function like mediation without the mediator. Alone in a room with the vehicle owner, prosecutors attempt to persuade her to pay the redemption fee, towing costs, and storage fees. *Id.* ¶ 15, Page ID # 232.

- When a property owner refuses to pay, they are compelled to attend more pre-trial conferences. *Id.* ¶ 16, Page ID # 232.

- Redemption fees support the budget of the prosecutor's office and local police. *Id.* ¶ 22, Page ID # 233.

These allegations provide the "sufficient factual matter" needed to show that Plaintiffs' claims are plausible. *See Iqbal*, 556 U.S. at 678. Their allegations are unusually detailed. Indeed, several of the allegations have

since been confirmed by uncontested evidence. *See* Pls.' Br. Supp. Mot for Class Cert. at 2–13, RE 21, Page ID # 620–31 (discussing the disputed and undisputed dimensions of Plaintiffs' claims); Motion Ex. 6, Vehicle Seizure Procedures, RE 20-7, Page ID # 522–25 (county's filing reflecting portions of its policy manual for vehicle seizures confirming several allegations).

Any fair reading of the complaint shows that Plaintiffs plausibly alleged that the county has a policy and practice of seizing vehicles in a manner that violates the Constitution. *See* Am. Compl. ¶¶ 26–27, 258–328, RE 12, Page ID # 234–35, 280–94. That is their only burden at this stage. The district court was right to so hold.

In fact, several federal courts have ruled that challenges to the lack of a prompt post-seizure hearing are viable, or even likely to succeed on the merits. *See Smith*, 524 F.3d at 838 (reversing dismissal of claim and holding that "given the length of time which can result between the seizure of property and the opportunity for an owner to contest the seizure . . . some sort of mechanism to test the validity of the retention of the property is required"); *Krimstock*, 306 F.3d at 43–44, 68–70 (reversing dismissal of claim based on the lack of "prompt post-seizure hearing" and the importance of maintaining possession of one's car); *Simms*, 872 F. Supp. 2d at 91–92 (granting preliminary injunction requiring a hearing at which

the plaintiff could challenge the seizure of his car seven months earlier).
The claim is viable here, too.

### III.  *Mathews* **Provides The Standard For Deciding The Timeliness Of An Interim Hearing.**

Finally, we arrive at the issue this Court certified for interlocutory appeal: What is the proper standard for evaluating the timeliness of an interim hearing?

The county asks this Court not to answer this question—the very question the motions panel authorized interlocutory appeal to address. The issue is given comparatively light treatment in the county's brief—just seven pages. *See* Wayne Cnty.'s Br. at 56–63, Page ID # 65–72.

When the county addresses the actual issue, it gets matters wrong. Against the jurisprudence, the county argues that this Court has consistently applied the *Barker* speedy-trial test to examine "whether civil forfeiture matters are filed in a constitutionally-timely manner." *Id.* at 56–61, Page ID # 65–70. But this test is for "the *speed* with which civil forfeiture proceedings themselves are instituted or conducted," not the continued *deprivation* of their vehicles "while those proceedings are being conducted." *Krimstock v. Kelly*, 306 F.3d 40, 68 (2d Cir. 2002) (emphasis added). When the issue is the deprivation of use of the property *before* the forfeiture proceeding, courts consistently apply *Mathews*.

Nearly every federal and state court applies the *Mathews* test to evaluate the due-process right to an interim hearing prior to final judgment. It is a fact-intensive test that balances the government's interest with the property owner's constitutional interest to determine when the Due Process Clause requires an opportunity to be heard. *Mathews*, 424 U.S. at 335.

Because Plaintiffs seek their "constitutionally protected property interest in retaining [their] vehicle[s] (and other property inside) *prior to final judgment*." Am. Compl. ¶ 301, RE 12, Page ID # 289 (emphasis added), this Court should hold that *Mathews* is the proper standard to determine the timeliness of an interim hearing. If this Court chooses to provide any further guidance on "how quick [is] quick enough," *see Nichols v. Wayne County*, 822 F. App'x 445, 450–51 (6th Cir. 2020), the Plaintiffs have alleged a right to an interim hearing within six months.

### A.    Due Process demands a timely interim hearing when someone is deprived of their vehicle.

The Due Process Clause guarantees that no person "shall . . . [be] deprive[d of] life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A fundamental requirement of due process is 'the opportunity to be heard' . . .  which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552

(1965). Determining how *timely* this opportunity must be depends on the factual circumstances at hand. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (describing due process as a flexible concept that "calls for such procedural protections as the particular situation demands" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))). This is where the *Mathews* balancing test comes in—it considers three factors that together illustrate the minimum procedures required. These factors are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

When there is potential for "irreparable injury . . . from a deprivation of property," due process demands either a "predeprivation or prompt post-deprivation hearing." *Comm'r v. Shapiro*, 424 U.S. 614, 629 (1976). Due process demands a *pre*-deprivation hearing absent "extraordinary situations" or "exigent circumstances." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48, 53 (1993). Therefore, a pre-deprivation hearing

39

is required in a variety of contexts. *See, e.g.*, *id.* at 62 (requiring a hearing before seizure of real property); *Fuentes v. Shevin*, 407 U.S. 67, 81–82 (1972) (requiring a hearing before seizure of stove and stereo as collateral); *Sniadach v. Fam. Fin. Corp. of Bay View*, 395 U.S. 337, 341–42 (1969) (holding that prejudgment garnishment without any opportunity to be heard denied due process).

In some circumstances, a prompt *post*-deprivation hearing is sufficient. For example, the seizure of mobile property, like vehicles, will often justify a post-deprivation hearing because of the government interests in seizing the property to establish jurisdiction and preventing the property's disappearance. *See James Daniel Good*, 510 U.S. at 52, 57. Even in these instances, however, "[t]he government must still provide the owner with 'notice and a timely post-seizure [hearing] prior to forfeiture.'" *See Nichols*, 822 F. App'x at 449–510 (alteration in original) (quoting *Ross v. Duggan*, 402 F.3d 575, 583–84 (6th Cir. 2004)); *see also* Wayne Cnty.'s Br. at 57, Page ID # 66 (quoting same).

But as the county would have it, there is no right to either a pre-deprivation or prompt post-deprivation, pre-forfeiture hearing when it comes to *their* vehicle seizure and forfeiture scheme. Under the county's forfeiture scheme, vehicle owners can be deprived of their main source of

transportation for six months or more without any timely opportunity to contest the validity of the seizure. Am. Compl. ¶¶ 291–94, RE 12, Page ID # 286–87. This conclusion is inconsistent with blackletter law: Property owners have a due-process right to a prompt interim hearing to contest even temporary deprivations of property.

### B.    The *Mathews* balancing test is the proper test for determining how "timely" an interim hearing must be.

Due process is a flexible concept. Thus, whether a hearing is "timely" depends on the facts at hand. The *Mathews* balancing test is the established approach to balance the government's interest with the property owner's constitutional interest and determine when the county must provide an opportunity to be heard.

Neither the Supreme Court nor this Court has had the chance to apply *Mathews* to the issue at hand—the right to an interim hearing in a vehicle seizure and forfeiture system. *See Nichols*, 822 F. App'x at 452–53 (dismissing due-process claim under Michigan's Identity Theft Protection Act because property owner failed to demonstrate municipal liability). Yet, every Circuit that has addressed the issue has applied *Mathews*, save one. *See Krimstock v. Kelly*, 306 F.3d 40, 52 n.12, 60 (2d Cir. 2002); *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496–97, 500 n.17 (5th Cir. 2020); *Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008), *vacated as*

*moot*, *Alvarez v. Smith*, 558 U.S. 87 (2009); *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014); *United States v. One 1971 BMW*, 652 F.2d 817, 820–21 (9th Cir. 1981); *but see Gonzales v. Rivkind*, 858 F.2d 657, 661 (11th Cir. 1988). A lopsided majority of district courts and state high courts likewise apply *Mathews*. *See e.g.*, *Washington v. Marion Cnty. Prosecutor*, 264 F. Supp. 3d 957, 974–75 & n.6 (S.D. Ind. 2017); *Brown v. District of Columbia*, 115 F. Supp. 3d 56, 66 (D.D.C. 2015); *Olson v. One 1999 Lexus*, 924 N.W.2d 594, 601–04 (Minn. 2019); *County of Nassau v. Canavan*, 802 N.E.2d 616, 623 (N.Y. 2003); *State v. Hochhausler*, 668 N.E.2d 457, 467 (Ohio 1996); *but see People v. One 1998 GMC*, 960 N.E.2d 1071, 1091–92 (Ill. 2011).

The only exception among federal courts is the Eleventh Circuit's decision in *Gonzales*, in which the court did not consider whether *Mathews* controlled. 858 F.2d at 661. Rather, the Eleventh Circuit relied on dicta from *United States v. Von Neumann*, 474 U.S. 242 (1986), which it read to provide that a civil-forfeiture proceeding provides all the post-seizure judicial review required by the Due Process Clause. *See Von Neumann*, 474 U.S. at 249 ("[T]he forfeiture proceeding without more, provides the postseizure hearing required by due process to protect [the owner's] property interest in the car"). But this Court has already rejected this

reading of *Von Neumann*, concluding instead that a pre-forfeiture hearing *is* required by due process when the interest is the continued deprivation of one's vehicle. *Nichols*, 822 F. App'x at 450–51. Plaintiffs have found no case in which a court relied on the Eleventh Circuit's reading of *Von Neumann*— and the county points to none. Just the opposite: This Court specifically rejected the Eleventh Circuit's position. *Id.*; *see also Serrano*, 975 F.3d at 500 ("We agree that *Von Neumann* is not dispositive of Serrano's due process challenge . . . .").

Despite this overwhelming precedent against it, the county argues that *Mathews* is not applicable to *their* vehicle seizure and forfeiture system. Wayne Cnty.'s Br. at 56–61, Page ID # 65–70. Instead, the county advocates for the *Barker* speedy-trial test. *Id.* In support of the *Barker* test, the county points to this Court's 2003 decision in *United States v. Ninety-Three Firearms*—a case about the delay in a judicial forfeiture action against firearms following timely administrative proceedings, criminal proceedings, and a petition for remission. 330 F.3d 414, 420, 424 (6th Cir. 2003). The county further points to *Von Neumann*, a Supreme Court case that similarly dealt with U.S. Customs Service's 36-day delay in responding to a petition for remission. Wayne Cnty.'s Br. at 58, Page ID # 67.

The county is wrong. The long line of cases above that use *Mathews* either: (1) explain why *Barker* is inapplicable; or (2) ignore *Barker* entirely.

In *Krimstock*, for example, then-Judge Sotomayor explained that the plaintiffs in *Barker*, *Von Neumann*, and *United States v. $8,850*, 461 U.S. 555 (1983), raised issue with "the *speed* with which civil forfeiture proceedings themselves are instituted or conducted." 306 F.3d at 68 (emphasis added). That is, those plaintiffs were concerned with how quickly the legal proceedings themselves would end. In *Krimstock*, and in this case, the plaintiffs challenged the continued *deprivation* of their vehicles "while those proceedings are conducted." *Id.*; *see* Am. Compl. ¶¶ 300–01, RE 12, Page ID # 289. In other words, Plaintiffs want their cars back while these proceedings are still going on. The interest in obtaining final judgment implicates the *Barker* speedy-trial test, while the interest in the possession and use of one's property while awaiting final judgment implicates the *Mathews* test.

This difference in interests makes both *Von Neumann* and *Ninety-Three Firearms* distinguishable. In *Von Neumann*, the plaintiff was not seeking due-process protections to use his car; instead, he was challenging U.S. Customs Service's 36-day delay in responding to his petition for remission. 474 U.S. at 246–47. The plaintiff already had some ability to

challenge the continued deprivation of his vehicle under Federal Rule of Criminal Procedure 41(g), and he could obtain his vehicle promptly after posting bond under 19 U.S.C. § 1614. *See Krimstock*, 306 F.3d at 52 n.12 (distinguishing Von Neumann's and Krimstock's due-process interests). In fact, the plaintiff already had his car back in his possession within two weeks of seizure after putting up bond. *Von Neumann*, 464 U.S. at 245–46. Therefore, all that was left was to challenge the government's delay in remission proceedings—discretionary proceedings that the Court determined were unnecessary to a forfeiture determination. *Id.* at 250.

*Ninety-Three Firearms* is likewise distinguishable. There, the property owner was not seeking due-process protections to use his 93 firearms while the case was ongoing. Instead, he was challenging the federal government's five-year delay in the judicial forfeiture proceedings. *Ninety-Three Firearms*, 330 F.3d at 424. The government had already begun administrative forfeiture proceedings after a month, and like in *Von Neumann*, the property owner sought a petition for remission and additionally could have challenged the seizure under Federal Rule of Criminal Procedure 41(g). *Id.* at 417, 425. Because this case concerned the interest in obtaining final judgment rather than the interest in use of the

firearms, this Court applied the *Barker* test without considering *Mathews*. *See id.* at 425–26.

Here, Plaintiffs seek their "constitutionally protected property interest in retaining [their] vehicle[s] (and other property inside) *prior to final judgment*." Am. Compl. ¶ 301, RE 12, Page ID # 289 (emphasis added). They allege that the county violates this right by "seiz[ing] and impound[ing] vehicles *before a final judgment* of forfeiture without providing a means for a property owner to obtain a prompt, post-seizure hearing before a judicial officer." *Id.* ¶ 300 (emphasis added). This interest in the use of their vehicles is properly analyzed under *Mathews*'s deprivation of property analysis and not *Barker*'s speedy-trial test.

Contrary to the county's assertion, this Court has not consistently applied *Barker* to cases like this one.[4] *See* Wayne Cnty.'s Br. at 56–57, Page ID # 65–66. As the motions panel stated in this case, "'the only constitutional question remaining,' namely what qualifies as 'timely.'" Order (6th Cir. 3/31/2022), RE 61, Page ID # 1084 (quoting *Nichols*, 822 F.

---

[4] The county claims the district court did not address *Barker*. Wayne Cnty.'s Br. at 59, Page ID # 68. But it rejected *Barker* by agreeing with decisions that have limited its application to questions about the timeliness of civil-forfeiture proceedings, rather than interim hearings. *See* Order (9/30/2021), RE 54 at 44 n.1, Page ID # 1019 (agreeing with *Krimstock* that *Barker* was relevant in *$8,850* only because the Supreme Court was addressing the timeliness of civil-forfeiture judgments).

App'x at 448). Here, this question is appropriately analyzed under the *Mathews* balancing test.

### C.    If this Court addresses the merits of Count IV, Plaintiffs have a right to an interim hearing within six months.

This Court should take this opportunity to provide guidance on "how quick [is] quick enough." *Nichols*, 822 F. App'x at 450–51. In doing so, the court must, like the district court, "assume the veracity of well-pleaded factual allegations." *See McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). Looking to Plaintiffs' detailed factual allegations, *see* Am. Compl., ¶¶ 286–309, RE 12, Page ID # 285–91, this Court should adopt Plaintiffs' *Mathews* analysis and hold that Plaintiffs allege facts entitling them to an interim hearing within six months. Additionally, if the Court applies the *Barker* speedy-trial test, it should reach the same holding.

### 1.    Plaintiffs' allegations support an interim hearing under *Mathews*.

Under the proper *Mathews* balancing test, Plaintiffs allege facts warranting an interim hearing. *Mathews* sets forth three factors to determine the minimum procedures required for a given deprivation of property: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

47

procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Applying these factors, Plaintiffs and at least some (if not all) of the putative class members have alleged a right to an interim hearing to contest the continued deprivation of their vehicles.

*First*, the interest in continued possession and use of one's vehicle is substantial. A vehicle is a vitally important interest, and in terms of value of one's tangible goods, second only to real property. *See generally James Daniel Good*, 510 U.S. at 62 (requiring a pre-seizure hearing for real property). As Plaintiffs allege: "Having access to a car is a vital tool for mobility and protection from the elements in Wayne County and, without one, vehicle owners are greatly inconvenienced, if not incapable of going to work, going to school, or interacting with others." Am. Compl. ¶ 303, RE 12, Page ID # 289. And each Plaintiff describes their personal need for their cars. *Id*. ¶¶ 47–48 (Ingram); ¶¶ 115, 133–34 (Wilson); ¶ 151 (Reeves), Page ID # 13, 22, 24–25, 27.

For example, in *Smith v. City of Chicago*, the Seventh Circuit explained that "the hardship posed by the loss of one's means of transportation, even in a city like Chicago, with a well-developed mass

transportation system, is hard to calculate." 524 F.3d at 838. The same is
true here. The complaint describes Wilson's difficult walk in "the elements
in Wayne County," "in what officers described as a 'bad neighborhood' to
find a bus stop." Am. Compl., ¶¶ 133, 303, RE 12, Page ID # 252, 289.
Furthermore, the lack of "*any* expeditious opportunity" in Wayne County
for innocent owners "to demonstrate that they did not know about or
consent to the crime" makes the private interest even more apparent. *Id.*
¶ 27, Page ID # 234–35; *see also Smith*, 524 F.3d at 838 ("This is bad
enough for an owner of an automobile, who is herself accused of a crime
giving rise to the seizure. But consider the owner of an automobile which is
seized because the driver—not the owner—is the one accused and whose
actions cause the seizure."); *Brown*, 115 F. Supp. 3d at 66 ("For an innocent
owner who loses a car for months without a means to contest the seizure,
the loss is even more significant.").

    This private interest deepens the longer the vehicle owner is left
without transportation. *Krimstock*, 306 F.3d at 61. As alleged, "[t]he county
routinely delays six months after the initial seizure, or longer, before
commencing forfeiture proceedings." Am. Compl. ¶ 291, RE 12, Page ID
# 286. When proceedings begin, "the county has a policy and practice of
compelling the owner to come back for four or more monthly conferences"

where there is no neutral arbitrator. *Id*. ¶¶ 297–98, Page ID # 288. Six

months is a significantly longer period than in similar vehicle-seizure cases

where the courts determined there is a right to an interim hearing. *See, e.g.*,

*Krimstock*, 306 F.3d at 54 (holding it untimely to begin forfeiture

proceedings 25 days after a claim is made); *Smith*, 524 F.3d at 835–36 (97–

187 days); *Washington*, 264 F. Supp. 3d at 976 (90–180 days). Considering

both the general interest in one's vehicle and the specific facts that heighten

that interest here, Plaintiffs' "private interest[s]" are substantial. *Mathews*,

424 U.S. at 335.

 *Second*, the county's policy and practice of seizing innocent owners'

vehicles creates a uniquely great "risk of an erroneous deprivation." *Id*. at

335. As Plaintiffs allege, "officers and sheriff's deputies regularly seize

vehicles based solely on their proximity to crime or a high-crime area." Am.

Compl. ¶ 304, RE 12, Page ID # 289–90. The county deprives "innocent

owners [of] *any* expeditious opportunity to demonstrate that they did not

know about or consent to the crime." *Id*. ¶ 27, Page ID # 234–35. This is

true even when officers find no drugs, guns, or cash, nor make any arrests.

*Id*. ¶¶ 101–04, 121–23, 128, Page ID # 249, 251–52.

 As the Supreme Court and other federal courts recognize, this lack of

procedural protections for innocent owners poses special due-process

concerns. *James Daniel Good*, 510 U.S. at 55; *Krimstock*, 306 F.3d at 56; *Washington*, 264 F. Supp. 3d at 977. As the district court explained, the county's policy and practices for vehicle impoundment are more troublesome than New York City's ordinances in *Krimstock*. Order, RE 54, Page ID # 1015–17. Comparing New York and Wayne County's programs, the district court noted that New York's permitted vehicle seizures pursuant to a DWI investigation, in which probable cause is readily apparent. *Id.*, Page ID # 1015. Here, however, officers' "probable cause determinations are considerably more complex" and sometimes absent altogether. *Id.*, Page ID # 1016; Am. Compl. ¶ 3, RE 12, Page ID # 229. Furthermore, the county has "a financial incentive to seize vehicles with the intent to forfeit" because of "the revenue generated by forfeiture (or, more commonly, by settlements paid by vehicle owners)." Am. Compl. ¶ 305, RE 12, Page ID # 290. Innocent or guilty, property owners must pay an arbitrary "redemption fee" (along with towing and daily storage fees) for each car towed. *Id.* ¶ 199, Page ID # 264. This pecuniary interest presents special due-process concerns. *James Daniel Good*, 510 U.S. at 55–56; *Krimstock*, 306 F.3d at 63; *Washington*, 264 F. Supp. 3d at 977.

These special concerns cannot be remedied by an "officer's unreviewed probable cause determination nor a court's ruling in the distant

future." *Krimstock*, 306 F.3d at 62. Neither would lesser measures "cure the temporary deprivation that an earlier hearing might have prevented." *James Daniel Good*, 510 U.S. at 56 (quotation omitted). None of the alternative remedies discussed in *Von Neumann* and *Ninety-Three Firearms* (namely, challenging the seizure under Federal Rule of Criminal Procedure 41(g) or seeking a petition for remission) are available to vehicle owners in Wayne County. Thus, the only adequate procedural safeguard is an interim hearing where vehicle owners can contest the legality of the seizure before a neutral decisionmaker. Am. Compl. ¶ 307, RE 12, Page ID # 290.

*Third*, the county has only a minimal possessory interest in a vehicle after seizure. *Mathews*, 424 U.S. at 335. The county has not articulated *any* interest in depriving people of their vehicles for six months or longer. This led the district court to provide two interests *sua sponte*: (1) "the need to prevent the vehicles from being used in future criminal acts," and (2) "the burden on judicial and prosecutorial resources in holding prompt detention hearings after each seizure." Order (9/30/2021), RE 54, Page ID # 1017. It correctly concluded: "Neither reason overcomes an individual's property interest in their car while awaiting forfeiture proceedings." *Id.*

52

On the first interest, the Supreme Court has explained that seizure of mobile property *before* providing a hearing is important to establish jurisdiction and prevent the property's disappearance. *James Daniel Good*, 510 U.S. at 52, 57. As then-Judge Sotomayor explained, however, once a vehicle is seized, those reasons no longer exist. *Krimstock*, 306 F.3d at 65. At that point, the governmental interest in the *continued* deprivation of the vehicle is no greater than the government's interest in the initial deprivation of real property in *James Daniel Good*. *Id.*

In addition, the concern that the car will be used in future criminal acts assumes that the property owner is the criminal, and the car is an instrumentality. These assumptions are not true when the county denies *all* property owners—"innocent and suspect alike"—the right "to contest the legality of the seizure." Am. Compl. ¶ 288, RE 12, Page ID # 286. Nor is it true that the car will stop "the use of drugs, solicitation of prostitutes, or otherwise committing crimes unrelated to cars." Order (9/30/2021), RE 54, Page ID # 1018. Unlike *Krimstock*, which involved a DWI ordinance, there is no guarantee that continued deprivation of one's vehicle will stop any future criminal activity in the county. *See id.*

On the second provided interest, though interim hearings would impose an administrative burden, "due process always imposes some burden on a governing entity." *Id.* (quoting *Smith*, 524 F.3d at 838).

Balancing these factors, the district court was correct that "an individual's significant private interest in their vehicle and the high risk of error in the current system lead the Court to conclude that a post-seizure and pre-forfeiture judgment hearing is required due process." Order (9/30/21), RE 54, Page ID # 1018–19. This is consistent with the Supreme Court and this Court's precedent. Likewise, this Court should hold that Plaintiffs' allegations present factual circumstances requiring an interim hearing within six months of seizure.

### 2.    Plaintiffs' allegations support an interim hearing under *Barker*.

The *Barker* speedy-trial test is not the proper test for determining the right to an interim hearing to challenge the continued deprivation of one's vehicle. Instead, it is the test to challenge "the speed with which civil forfeiture proceedings themselves are instituted or conducted." *Krimstock*, 306 F.3d at 68. Because Plaintiffs do not challenge "the speed with which civil forfeiture proceedings themselves are instituted," the *Barker* test is inapplicable. Still, if this Court chooses to apply *Barker*, Plaintiffs allege facts warranting an interim hearing.

Like *Mathews*, the *Barker* test is fact-intensive and balances the property owner's interest with the government's interest. *Ninety-Three Firearms*, 330 F.3d at 425 (citing *$8,850*, 461 U.S. at 565). Instead of three factors, the *Barker* test involves four: (1) "the length of the delay," (2) "the reason for the delay," (3) "the claimant's assertion of his right," and (4) "the prejudice to the claimant." *Id*. at 424–25. Applying these factors, Plaintiffs have alleged a right to an interim hearing to contest the continued deprivation of their vehicles.

The county does not provide a single case in which a court has applied the *Barker* factors to the interim hearing issue. Both *Von Neumann* and *Gonzales* apply *Barker* to cases about the delay in final judgment—an interest distinct from that in possessing and using one's vehicle prior to final judgment. *Von Neumann*, 474 U.S. at 250–51; *Gonzales*, 858 F.2d at 661, 663. Neither court engaged in the balancing test required by *Barker* because of the existing interim procedures available. *Von Neumann*, 474 U.S. at 250 (holding that there is no due-process right to discretionary remission proceedings); *Gonzales*, 858 F.2d at 662 (holding that the plaintiffs were not entitled to a forfeiture hearing because they did not utilize the interim procedures already available). The county has not shown how the *Barker* factors would apply, but offers *Ninety-Three Firearms* as a

basis for comparison—a case about the delay in judicial forfeiture proceedings for firearms. 330 F.3d at 424.

*First*, the "length of the delay" in providing an *interim* hearing is substantial. *Ninety-Three Firearms*, 330 F.3d at 424–25. As discussed with the first *Mathews* factor, "[t]he county routinely delays six months after the initial seizure, or longer, before commencing forfeiture proceedings." Am. Compl. ¶ 291, RE 12, Page ID # 286. When proceedings begin, "the county has a policy and practice of compelling the owner to come back for four or more . . . monthly conferences." *Id.* ¶ 298, Page ID # 288. This delay is longer than in similar vehicle-seizure cases. *See, e.g.*, *Krimstock*, 306 F.3d at 54 (declaring forfeiture proceedings 25 days after a claim is made untimely); *Smith*, 524 F.3d at 835–36 (97–187 days); *Washington*, 264 F. Supp. 3d at 976 (90–180 days). In *Ninety-Three Firearms*, this Court determined the five-year delay in providing the judicial forfeiture proceedings was presumptively prejudicial. 330 F.3d at 425. Though *Ninety-Three Firearms* involved a longer delay, the government in that case at least began administrative forfeiture proceedings a month after seizure, there were pending criminal charges, and the property owner could challenge seizure with a petition for remission or action under Federal Rule

of Criminal Procedure 41(g). *Id*. at 417, 424–25. None of those things is true here.

*Second*, the county has provided no "reason for the delay." *See id*. at 424–25. Again, any interest in establishing jurisdiction and preventing the property's disappearance ceases to exist post-seizure. *Krimstock*, 306 F.3d at 65. Plaintiffs allege a more plausible reason: "The purpose of these practices is to maximize revenue generated from seizures." Am. Compl. ¶ 234, RE 12, Page ID # 270. The complaint describes the process as the county's "seize-and-ransom" policy—by which the county unreasonably delays civil-forfeiture proceedings to "pressure [the property owner] to pay the redemption fee, plus towing and storage." *Id*. ¶¶ 297–99, 317, RE 12, Page ID # 288, 292. Obviously, the county's desire to raise revenue cannot justify its denial of due process. In *Ninety-Three Firearms*, the years-long delay was deemed justified only because the government legitimately needed to await the conclusion of parallel proceedings. 330 F.3d at 425. The same is not true here, where no one has been charged with any crime.

*Third*, each Plaintiff has taken significant steps to assert their rights. *See Id*. at 424–25. The complaint describes their efforts to get their cars back. Am. Compl. ¶¶ 59–64, 81, 89, 91 (Ingram), ¶¶ 109–13, 135, 148 (Wilson), ¶¶ 161–69 (Reeves), RE 12, Page ID # 243–44, 246–48, 250, 253,

255, 257–58. Again, this is unlike *Ninety-Three Firearms*, where the property owner "neglected to pursue any of the myriad options available to him," including Federal Rule of Criminal Procedure 41(g). 330 F.3d at 425.

*Fourth*, there is significant prejudice to Plaintiffs. *See id.* at 424–25. In cases dealing with the right to a speedy trial or forfeiture proceedings, a property owner's prejudice is based on the ability to assert their claim or defense. As this Court explained in *Ninety-Three Firearms*, prejudice can be shown through "the loss of witnesses or other important evidence." *Id.* at 426 (quotation omitted). But here, where the due-process issue is the deprivation of possession and use of the property *before* the forfeiture proceeding, the harm compounds each day. Am. Compl. ¶ 201, RE 12, Page ID # 264 (describing daily compounding storage fees). Thus, the constitutional harm in this case occurs before the proceeding, not during the proceeding.

Though the *Barker* factors are not the right standard for determining the right to an interim hearing, the result under *Barker* and *Mathews* would be the same: Plaintiffs have plausibly alleged a right to an interim hearing within six months. Both tests require this Court to balance the property owners' interests against the county's and, unsurprisingly, both

lead to the conclusion that the Due Process Clause requires an interim hearing before a neutral decisionmaker.

## Conclusion

This Court should hold that *Mathews* is the proper standard for evaluating the timeliness of a post-seizure, pre-forfeiture hearing and hold that the county's minimum six-month delay before a vehicle seizure can come before a judge is unconstitutional.

Dated: January 18, 2023                    Respectfully submitted,

                                           _/s/ Wesley Hottot_
                                           Wesley Hottot
                                           Wash. Bar No. 47539
                                           Institute for Justice
                                           600 University Street, Suite 1730
                                           Seattle, WA 98101
                                           (206) 957-1300
                                           whottot@ij.org

                                           Kirby Thomas West
                                           Penn. Bar No. 321371
                                           Institute for Justice
                                           901 North Glebe Road, Suite 900
                                           Arlington, VA 22203
                                           (703) 682-9320
                                           kwest@ij.org

                                           *Attorneys for Appellees*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Rule 5(c)(1) because it contains 12,948 words, as determined by Microsoft Word, excluding items made exempt by Rule 32(f) and Sixth Circuit Rule 32(b)(1).

This brief complies with the font-style requirements of Rule 32(a)(5)–(6) because it was prepared in a proportionally spaced typeface (Georgia) and 14-point font size.

/s/ Wesley Hottot
Wesley Hottot

*Attorney for Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2023, this Appellees' Brief was served through the Court's CM/ECF system on counsel for all parties required to be served.

/s/ Wesley Hottot
Wesley Hottot

*Attorney for Appellees*

# Addendum

RE 1     Complaint                                        Page ID # 1–54

RE 12    Amended Complaint                                Page ID # 229–298

RE 18    Motion to Abstain on the Claims Asserted         Page ID # 338–422
         by Plaintiff Stephanie Wilson by Defendant
         Wayne County

RE 19    Motion to Abstain or Stay, on in the             Page ID # 423–474
         Alternative, Motion to Dismiss the Claims
         Asserted by Plaintiff Robert Reeves by
         Defendant Wayne County

RE 20    Motion to Dismiss, or in the Alternative,        Page ID # 475–610
         Motion for Summary Judgment on the
         Claims Asserted by Plaintiff Melisa Ingram
         by Defendant Wayne County

RE 21    Motion for Class Certification or Leave to       Page ID # 611–728
         Conduct Class Discovery

RE 43    Notice of Hearing by Video Conference            Page ID # 952–953

RE 49    Order Denying Defendant's Motion to              Page ID # 964–965
         Dismiss or in the Alternative Motion for
         Summary Judgment Against Plaintiff
         Ingram and Motion to Stay or in the
         Alternative Motion to Dismiss Plaintiff
         Reeves as Moot

RE 54    Order Granting in Part and Denying in Part       Page ID # 976–1025
         Defendant's Motions To Abstain, Stay,
         Dismiss, And for Summary Judgment;
         Granting Defendant's Motion to Adjourn;
         And Denying Plaintiffs' Motion For Leave to
         Conduct Discovery

| RE 55 | Motion for Reconsideration on the September 30, 2021 Order Concerning the Claims Asserted by Plaintiff Robert Reeves by Defendant Wayne County | Page ID # 1026–1039 |
| RE 56 | Motion for Reconsideration on the September 30, 2021 Order Concerning the Claims Asserted by Plaintiff Stephanie Wilson by Defendant Wayne County | Page ID # 1040–1048 |
| RE 57 | Motion for Reconsideration on the September 30, 2021 Order Concerning the Claims Asserted by Plaintiff Melisa Ingram by Defendant Wayne County | Page ID # 1049–1069 |
| RE 61 | Order from U.S. Court of Appeals for the Sixth Circuit | Page ID # 1081–1085 |
| RE 62 | Order from U.S. Court of Appeals for the Sixth Circuit | Page ID # 1086–1090 |
| RE 63 | Notice of Interlocutory Appeal | Page ID # 1091–1092 |
| RE 70 | Order Denying Motions for Reconsideration | Page ID # 1157–1173 |